UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CYNTHIA MATTHEWS,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**KILOLO KIJAKAZI, Acting** )<br>**Commissioner of the Social Security** )<br>**Administration,** )<br>)<br>**Defendant.** )<br>) | Civil Action Number<br>**4:20-CV-01097-AKK** |

### MEMORANDUM OPINION

Cynthia Matthews brings this action under 42 U.S.C. § 405(g) of the Social Security Act seeking review of the final adverse decision of the Acting Commissioner of the Social Security Administration. Doc. 1. Matthews argues that the ALJ's decision, which became the final decision of the Acting Commissioner, was not supported by substantial evidence because the ALJ should not have discounted Matthews' pain-related testimony as unsupported by the record. *See* doc. 17 at 18, 21. After careful examination, however, the court finds that the ALJ's decision is due to be affirmed.

**I.**

After the pain from Matthews' neck and back caused her to leave her job, Matthews filed for disability and disability insurance benefits, alleging a disability onset of March 2016. Doc. 17 at 1–2. Her claims were denied, and an ALJ

subsequently held a hearing with Matthews, her attorney, and a vocational expert at which the ALJ found Matthews was not disabled. *Id.*; R. 15. The SSA Appeals Council denied Matthews' request for review, rendering the ALJ's decision the final decision of the Acting Commissioner. R. 1. Matthews subsequently filed this appeal. Doc. 1.

## II.

The court reviews only whether (1) the record contains substantial evidence to sustain the ALJ's decision and (2) the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's factual findings are conclusive if they are supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The threshold for this evidentiary sufficiency "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529; *Moore*, 405 F.3d at 1211. If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).

When determining whether substantial evidence supports the Commissioner's decision, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Despite this limited scope of review, however, the court must not automatically affirm the decision of the Commissioner. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bloodsworth*, 703 F.2d at 1239. The court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Courts review de novo the legal conclusions upon which the Commissioner's decision is based. *Id.* at 1103; *Moore*, 405 F.3d at 1211.

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and

laboratory diagnostic techniques." *Id.* § 423(d)(3). Determinations of disability require a five-step analysis in which the ALJ determines:

> (1) whether the claimant is currently unemployed;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals one listed by the Commissioner;
> (4) whether the claimant is unable to perform his or her past work; and
> (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).[1] If the claimant cannot return to prior work, the Commissioner bears the burden of showing other work the claimant can do. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Relevant in this case, when a claimant seeks to establish a disability through her own testimony concerning "pain or other subjective symptoms," the claimant

---

[1] If a claimant's impairments do not meet or equal a listed impairment at Step Three, the ALJ determines the claimant's "residual functional capacity" based on "all of the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 404.1520(e). *See also* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."). The ALJ uses the residual functional capacity at Step Four to determine if the claimant can perform past relevant work and at Step Five to determine if the claimant can adjust to other work. 20 C.F.R. § 404.1520(e).

4

must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting subjective testimony "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The ALJ need not expressly refer to this test, but the ALJ's decision must indicate the standard was applied. *See id.* at 1226.

Finally, if the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including the objective medical evidence, the claimant's history, and statements by the claimant and the claimant's doctors, and the ALJ may consider factors like the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage,

effectiveness, and side effects of the claimant's medication; and treatments other than medication. *Id.* Last, the ALJ must examine the claimant's symptom-related testimony in relation to all of the other evidence, considering whether there are any "inconsistencies or conflicts between those statements and the record." *Id.*

## IV.

In this case, at Step One, the ALJ determined that Matthews had not engaged in substantial gainful activity since 2016. R. 17. At Step Two, the ALJ found that Matthews suffered from two severe impairments—spine disorders and headaches—but that Matthews' anxiety "[did] not cause more than minimal limitation in [her] ability to perform mental work activities and [was] therefore non-severe." R. 17–18. The ALJ next found that Matthews' impairments did not meet or medically equal the severity of one of the listed impairments in the relevant Social Security regulations. *See* R. 18 (citing 20 C.F.R. § 404). Accordingly, the ALJ reviewed Matthews' testimony, her symptoms, and the extent to which these symptoms could be accepted as consistent with the evidence in the record, including the medical evidence and opinions. *See id.*

Here, the ALJ noted the two-step process for evaluating Matthews' pain-related testimony and its bearing on Matthews' residual functional capacity. *See* R. 19. The ALJ began by recognizing that Matthews testified that she stopped working in early 2017 due to her neck surgery, back injury, and headaches. *See id.* Later that

6

year, Matthews reported that she could lift 10 pounds, stand for one hour, and sit for one hour; Matthews also stated that she could "watch television, give her husband his medicine, shower, drive five miles one-way, cook, walk around outside, wash dishes, go out alone, shop in stores for an hour twice per week, pay bills, and manage funds." R. 19–20 (internal citations omitted). *See also* R. 282–87. Turning to the hearing evidence, the ALJ noted that Matthews testified that she drove often and up to 25 miles at a time, lost her last job due to absences caused by pain from standing and walking, had neck surgery in 2016 and no further treatment, had headaches multiple times per week, and received "light duty restrictions" from her doctor following surgery. R. 20. *See also* R. 40, 44–48. Matthews also testified that she had lower back pain but had not had surgery for it, could lift a two-liter bottle but not a gallon of milk, could pick up change from a table but not from the floor, and could manage her personal care, meals, and bills. *See* R. 20. *See also* R. 48–50.

Comparing this testimony to the other evidence in the record, the ALJ walked through records from Matthews' visits to several clinics and doctors from 2015 through 2019. *See* R. 20–24.[2] In the ALJ's retelling, these visits did not demonstrate

---

[2] The ALJ paraphrased the reasons for and findings regarding a wide array of medical examinations in several sentences for each visit. *See, e.g.*, R. 22 ("On April 24, 2017, [Matthews] established care at the Etowah Free Community Clinic due to losing her insurance. She reported that she had been off work since March 2017 because her pain returned when she worked as a door greeter. She reported sleeping well. Upon examination, she exhibited limitation of movement of her neck. The rest of her examination was unremarkable. She reported persistent neck pain. She received refills of Lorazepam and naproxen.") (internal citation omitted).

remarkable physical examinations or reveal dramatic findings. *See id.* Rather, upon review by the ALJ, Matthews' medical records generally indicated some pain and limitations in Matthews' mobility but not worsening ailments. *See id.*

The ALJ then referenced a 2017 review of this medical evidence by a state agency physician, who opined that Matthews could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for six hours a day; and climb stairs, balance, kneel, and crouch. *See* R. 24. The ALJ accorded "great weight" to this opinion "because it [was] consistent with the work restrictions in the light category assessed for [Matthews] following cervical fusion and because no doctor issued any other restrictions to [Matthews'] activities." *Id.* Reviewing a 2016 functional capacity evaluation by Sheral Serafini, the ALJ remarked that Serafini opined that Matthews "performed work within the light work demand level as defined and outlined in the Dictionary of Occupational Titles." *Id.* The ALJ gave this opinion "great weight" because it was "consistent with the medical evidence showing that [Matthews] had good range of motion in her neck at times." *Id.* The ALJ summarized:

> [Matthews] did quite well following cervical fusion in 2016, and she reported that her arms were a lot better. She was neurologically intact in spite of some neck stiffness, and she did not complain of neck pain after pulling vines off the side of her house. The opinion is consistent with [Matthews'] testimony that she drives often and up to 20 to 25 miles at a time, performs personal care, prepares simple meals, pay[s] bills, and watches television for seven or eight hours per day.

*Id.* On this basis, the ALJ concluded that Matthews' testimony regarding the frequency of her headaches was not supported by the medical record. *Id.*

At the hearing, the ALJ asked the vocational expert whether a hypothetical person of Matthews' age, education, and work history who could work at a light exertional level; frequently climb ramps and stairs, balance, kneel, and crawl; and occasionally stoop could perform Matthews' past work. *See* R. 57–58. The vocational expert responded in the negative but said this hypothetical person could work as a ticket seller, booth cashier, or office helper. R. 58. The ALJ added to the hypothetical limitations the need to alternate between sitting and standing every 20 to 30 minutes without leaving the workstation; the vocational expert testified that this person could serve as a booth cashier, office helper, or bench assembler. R. 58–59. The ALJ then asked whether this hypothetical person could work if the person's time off-task "would be 20 percent of the workday"; the vocational expert said this "would be work preclusive." R. 59.

The ALJ determined that Matthews had the residual functional capacity to perform "light work" except that she could "occasionally climb[] ramps or stairs." R. 19. The ALJ continued:

> [Matthews] can never climb ladders, ropes, or scaffolds. She is capable of balancing and kneeling frequently. She is capable of crouching and stooping occasionally, but she can never crawl. She is capable of reaching overhead occasionally and handling and fingering frequently. She must avoid concentrated exposure to extreme cold. She must avoid even moderate exposure to vibration. She must avoid all exposure to

9

>unprotected heights, unprotected moving mechanical parts, and dangerous machinery. She must alternate sitting and standing every 20-30 minutes throughout the workday in order to change position for a brief positional change of less than five minutes but without leaving the workstation. Time off-task can be accommodated by normal work breaks.

*Id.* Using the vocational expert's testimony, the ALJ concluded that Matthews could make a "successful adjustment to other work" based on this residual functional capacity and her age, education, and work experience. R. 25. Specifically, the ALJ determined that Matthews could perform the requirements of booth cashier, of which there were approximately 49,000 jobs nationally; officer helper, of which there were approximately 24,000 jobs nationally; and bench assembler, of which there were approximately 28,000 jobs nationally. R. 25–26. Accordingly, the ALJ found that Matthews was not disabled. R. 26.

## V.

Matthews argues that the ALJ's decision was not supported by substantial evidence because Matthews provided ample testimony about her pain and headaches, and the ALJ discredited this testimony despite the "strong medical evidence to support [it]." *See* doc. 17 at 15–16, 18. Matthews asserts that the duration, frequency, and intensity of her pain—all factors the ALJ evaluates when considering pain-related testimony—were "reflected by her medical records[,] and her chronic pain persists despite her surgery." *Id.* at 21. Matthews contends that she "has consistently sought medical treatment; consistently pursued her surgical and

10

PT opportunities; and consistently documented her chronic pain at each provider visit," and "[s]he could not perform the light work job of Wal-Mart greeter when she tried it." *Id.*

The SSA counters that the ALJ properly considered Matthews' subjective testimony and concluded that the testimony was not entirely consistent with the evidence. Doc. 18 at 6. In the SSA's view, the ALJ "articulated explicit and adequate reasons" for this conclusion by discussing in depth Matthews' back and neck injuries, her medical visits and treatment from 2015 to 2019, and the results of the visits. *See id.* at 6–10. The SSA concludes that, based on the ALJ's review, the ALJ essentially found that Matthews' physical examinations "were largely unremarkable with limitations noted only in [Matthews'] cervical range of motion and upper extremities, for which the ALJ accommodated by limiting [her] to occasional overhead reaching and frequent handling and fingering." *Id.* at 11.

The court agrees with the SSA that substantial evidence supports the ALJ's decision that Matthews' pain testimony did not wholly accord with the other evidence. Turning to the ALJ's written decision, the ALJ marched through over 20 visits to doctors and clinics spanning from 2015 to 2019 in order to determine the bases for Matthews' impairments and complaints, the treatments she received, whether the treatments led to improvement, and whether the examinations revealed worsening or serious conditions. *See* R. 20–24. Following its own review of the

underlying medical records cited by the ALJ, *see, e.g.*, R. 327–29, 335, 339–41, 351–55, 360, 438, 507, 522, 525, the court finds that the ALJ accurately described these visits, which indicated Matthews' history of back and neck pain, different forms of treatment she received, and "unremarkable" examination results in some instances.

Moreover, the court finds that the ALJ properly considered how Matthews' testimony aligned with the medical evidence and how the "intensity and persistence of [Matthews'] symptoms . . . limit[ed] [her] capacity for work." *See Costigan*, 603 F. App'x at 786 (citing 20 C.F.R. § 404.1529(c)(1)). It appears from the ALJ's explanations and citations that the ALJ properly considered the objective medical evidence from the medical visits; statements by Matthews; her daily activities; the location, duration, frequency, and intensity of her pain; and her treatments, including medication, physical therapy, and surgery, in order to evaluate Matthews' pain-related testimony. *See id.*; R. 20–24. The ALJ's determinations of Matthews' residual functional capacity and the other jobs she could perform suggest the ALJ accounted for this information. *See, e.g.*, R. 19 ("[Matthews] must alternate sitting and standing every 20-30 minutes throughout the workday in order to change position for a brief positional change of less than five minutes but without leaving the workstation. Time off-task can be accommodated by normal work breaks.").

Against this backdrop, more than a "scintilla" of evidence supports the ALJ's finding that the medical evidence did not fully accord with Matthews' testimony

about her pain and subjective symptoms. *See Martin*, 894 F.2d at 1529; *Moore*, 405 F.3d at 1211. While Matthews testified as to her neck and back pain and the challenges these ailments have caused, the court may not reevaluate or reweigh her medical evidence and testimony anew. *See Noble*, 963 F.3d at 1323. Accordingly, substantial evidence undergirds the ALJ's factual findings about Matthews' pain and its bearing on her capacity to work, and the court must affirm. *See id.*

## VI.

As explained above, because substantial evidence supports the ALJ's decision discounting Matthews' pain-related testimony and finding her not disabled, the court will affirm the ALJ's decision by separate order.

**DONE** the 10th day of January, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE